### FREIDLER *v.* CHOTARD and Husband.[1]

(*Circuit Court, W. D. Louisiana.* October, 1883

REMOVAL OF CAUSE—SEPARATE CONTROVERSY—INTERVENOR.

The plaintiff, claiming that by a contract with him the defendants became lessees of a plantation, of which he became owner, sued them for rent, and asserted his lessor's lien upon all effects found upon the premises. The parties all lived in the same state. A citizen of a different state intervened, claiming to be the owner of a part of the effects in question, and praying, as essential to his relief, that the contract between the plaintiff and the defendants be decreed to be a mere mortgage giving the plaintiff no rights of ownership. *Held,* that there was no separable controversy wholly between the intervenor, on one side, and the other parties upon the other, such as to give him the right to remove the cause into a federal court.

On Motion to Remand.

[1] Reported by Talbot Stillman, Esq., of the Monroe, La., bar.

BOARMAN, J. Isaac Freidler entered into a contract with Mrs. S. M. Chotard and husband, all citizens of Louisiana, in relation to the Minorica plantation, in Concordia parish, Louisiana. A statement of the demands in his petition will be sufficient, without reciting in detail the items of the agreement for considering plaintiff's motion to remand. Freidler, basing his title and ownership on the contract agreement between himself and Mrs. Chotard, sues her for $1,166 for one year's rent of the said plantation, and asks for recognition and enforcement of his lessor's lien on all the effects found on the premises. Issue by default was joined on his action against Mrs. Chotard, when W. R. Young, a citizen of Mississippi, intervened in the suit to assert his claim to the ownership of one-half of the stock, revenues, etc., on which Freidler prays for his lien, and to demand other rights to and uses of the plantation. In maintenance of his action he alleges that in pursuance of a contract entered into with Mrs. Chotard and husband, in June, A. D. 1882, subsequent to the date of the agreement between Freidler and Mrs. Chotard, he *became the owner* of and entitled to the rights and things claimed by him. Alleging that he fears collusion between Freidler and Mrs. Chotard to defraud him, his claim to said property and rights are set up against all parties. He avers that the agreement upon which Freidler bases his action is, in form and substance, only a common-law mortgage, and the property and rights claimed by him are in no way affected by Freidler's pretended claim to the ownership of the plantation, or by any liens or privileges in his favor. Young prays that Freidler's demand as to the ownership of plantation be rejected; that the contract be declared a common-law mortgage; that he have exclusive control of the plantation business; that his right to one-half of the stock, revenues, etc., of the plantation, for the period of 10 years, be recognized and made executory.

It may be that under the practice in Lousiana he has included, among his several demands, some issues upon which, as an intervenor, he could not in this suit be heard in the state court. But whatever view this court may entertain, should such questions of state practice be presented in a case on trial, the right to intervene "when one has an interest in the success of either of the parties to the suit, or an interest opposed to both, is clear enough. Code Pr. art. 390. Young's right to remove the suit is not adversely affected by the fact that he appears as an intervenor, and if he has presented such a controversy as is contemplated in the following section of Act 1875, the motion to remand should be denied: "When in any such suit mentioned in this section there shall be a controversy wholly between citizens of different states, and which can be fully determined as between them, then one or more of the plaintiffs or defendants actually interested may remove said suit into the circuit court."

The intervenor claims that the pending suit, which he caused to be

removed, discloses several separable controversies which are wholly between himself and a citizen of another state, and which can be fully determined as between them independently of the other citizen of that state; that the issues he raises with Freidler can be determined without Mrs. Chotard being a necessary party, or that the issues he raises with Mrs. Chotard can be determined for or against himself, independently of and without the presence of Freidler. Without adopting the method for division, suggested in his brief, of the several demands presented in his petition, I think the following summary covers all the controversies or issues he presents:

(1) Shall the claim which he asserts to one-half of the stock, revenues, or on which the lessor's lien is prayed for, be allowed; if allowed shall it be free from the rights asserted by Freidler. (2) In order to maintain his claim to the effects, or free from Freidler's demand, he, denying Freidler's ownership, presents an issue as to the legal effect of the agreement between Freidler and Mrs. Chotard on his rights, and as to its effect between plaintiff and defendant in original suit. (3) Alleging his fear of collusion between Freidler and Mrs. Chotard to defraud him, he asserts his demands, and asks that they be recognized and made executory against all parties for 10 years, the period of his contract with Mrs. Chotard. Freidler put all of the intervenor's demands at issue by a general denial. So far no issue is joined between Young and Mrs. Chotard.

In this court Mrs. Chotard may or may not answer Young's petition. If she does not answer, and the court takes jurisdiction, he can put at issue and try, on default against her, all the issues involved in his petition. As the case now stands, are any of the controversies presented in the pleadings wholly between citizens of different states? Can any one of the controversies be fully determined as between Young and Freidler, or between him and Mrs. Chotard, without all three being necessary parties to the suit? Are not the claims or demands set up by Young so intimately blended, and inseparably connected, with the matters and issues asserted and denied by the parties to the original suit that no one of them can be taken up and tried without the judgment, whatever it may be, affecting, controlling, and binding all three of the litigants as to all the issues in the suit?

Before further discussing these questions it may be well to say that the right, under the law and constitution, to remove the *whole suit,* when there is such a controversy disclosed, even though in removing the whole suit the circuit court finds it necessary to take jurisdiction of and to decide issues which are solely between citizens of the same state, and which are entirely free from all entanglements with demands of a non-resident citizen, since the decision in *Barney* v. *Latham*, 103 U. S. 205, seems no longer an open question. In that case the United States supreme court seem to have considered, and to have reconciled, satisfactorily to themselves, this doctrine as

to the removal of the whole suit, containing issues, *some of which are solely and exclusively between citizens of the same state,* with the constitutional provision that the judicial power of the United States shall extend to "controversies between citizens of different states." At any rate, since that decision we are forbidden to question that, where a suit pending in the state court unites two separable controversies, one distinctly with a citizen of plaintiff's own state, and the other with a citizen of a different state, the cause may be removed.

In discussing the matter of separable issues, or in ascertaining whether such a separable controversy as is contemplated in the act of 1875 is presented by the intervenor, it should be kept in mind that Young asserts his ownership of the stock, etc., his right to the exclusive management of the plantation business, his right to enjoy one-half of the revenues thereof for 10 years, and his right to have all of his demands and claims made executory against all parties to the suit. This summary of his demands appears to me to forbid the idea that any court could allow or deny to him any of them without, at the same time, passing on controversies which, before his appearance in the suit, existed solely between the plaintiff and defendant, or on matters alleged and denied by and between citizens of the same state, and which are inseparably blended with all the items of the intervenor's demand, and to the allowance of which all the parties are necessary parties.

In the case of *Iowa Homestead Co.* v. *Des Moines Nav. & R. Co.* 8 FED. REP. 97, the complainant sued for a sum of money in a state court and claimed a special lien on certain lands. Litchfield, a citizen of New York, intervened in the suit to assert his ownership of the land, and to dispute the special lien, and caused the suit to be removed. Mr. Justice MILLER, on hearing the motion to remand, said, if complainant saw fit to dismiss his claim for the special lien on the land, the suit would be remanded. The complainant dismissed the claim to the special lien, but after its dismissal the court, having improvidently allowed Litchfield to file some other pleadings, had to pass upon a second motion to remand. The judges (McCRARY and LOVE) of the Fifth circuit said, in considering the last motion to remand, that the first motion should have prevailed without any conditions whatever; that the issues presented by Litchfield did not warrant the removal; that the case was easily distinguished from the *Barney-Latham Case.*

In *Bailey* v. *New York Sav. Bank,* 2 FED. REP. 14, the plaintiff, a widow, sued the bank for $25,000, alleged to be a deposit made for her account by her deceased husband. The bank caused Lewis Bailey, executor of Bailey, deceased, a citizen of Connecticut, to be made a party, and the bank, while laying no claim to the money, refused to pay it over to any one except under an order of court. The state court allowed the executor to remove the suit on the ground, as the judge said, that the bank was a mere stockholder, and the real

controversy was between citizens of different states. On motion to remand, Justice BLATCHFORD, holding that the bank was not a mere stockholder, but a necessary party to any judgment that might be given in the case, since the suit discloses no "controversy wholly between citizens of different states, and which can be fully determined as between them, without the presence of a defendant citizen of the same state with plaintiff, actually interested in such controversy."

In the pending suit, before the appearance of Young, judgment could have been given in favor of either party without in any way binding or affecting Young's claims. His voluntary appearance makes the dual controversy, new parties, and separable issues; but he claims nothing that is not intimately blended and connected with the matters actually in controversy between plaintiff and defendant, citizens of the same state. Mrs. Chotard, default having been taken against her by Freidler, stands as denying all of the demands made by Freidler. So she will stand, as against Young's demand, should he take default against her. It is suggested in argument that she may not answer, or may admit Young's claim; but her action cannot in this way be anticipated. If she does not answer, Young cannot try his intervention without putting her in default, and then she will stand, as she is presumed now to stand, in court as having denied all of his claims. All three of the litigants have controversies together, and against one another. The several things claimed by Young form, more or less, the subject matter of a controversy between Freidler and Mrs. Chotard, and he could not obtain a judgment in any court allowing him any one of the rights or things claimed, without such judgment operating upon and binding plaintiff and defendant as to matters and things about which they are actually disputing.

Cause remanded.